## IN THE CIRCUIT COURT OF HINDS COUNTY, MISSISSIPPI
### FIRST JUDICIAL DISTRICT

**VERNA HAWKINS, INDIVIDUALLY,
AND ON BEHALF OF AND FOR THE USE
AND BENEFIT OF THE WRONGFUL DEATH
BENEFICIARIES OF WYDETT HAWKINS**

**PLAINTIFF**

**VS.**                                                         CAUSE NO.: 23-361

**MANHATTAN NURSING AND REHABILITATION
CENTER, LLC, AURORA CARES, LLC, ASHLEY
BOULDIN, LPN, FREDIA HARVEY, LPN,
UNIDENTIFIED ENTITIES 1-10, AND JOHN DOES
1-10 (as to THE MANHATTAN NURSING FACILITY)**        **DEFENDANTS**

### COMPLAINT

### JURY TRIAL REQUESTED

COMES NOW, the Plaintiff, Verna Hawkins, Individually, and on behalf of and for the

use and benefit of the Wrongful Death Beneficiaries of Wydett Hawkins, and for her causes of

action against Defendants, states:

### I.     PARTIES

1.01    Verna Hawkins is the wife of Wydett Hawkins, deceased, and brings this action

individually, and on behalf of and for the use and benefit of the wrongful death beneficiaries of

Wydett Hawkins, and pursuant to Mississippi law.

1.02    Wydett Hawkins was, at all times material hereto, a resident of Manhattan Nursing

and Rehabilitation Center, LLC, a skilled nursing facility located at 4540 Manhattan Road,

Jackson, Mississippi 39206 from on or about November 17, 2021 until his death on February 21,

2022.

1.03    Defendant, Manhattan Nursing and Rehabilitation Center, LLC, (hereinafter

"Manhattan Nursing" or "Nursing Home Defendants" or "Manhattan Nursing Defendants") is a



EXHIBIT
**A**

business operating in the state of Mississippi with its principal place of business located at 4540 Manhattan Road, Jackson, MS, 39206, Hinds County, Mississippi, and that may be served with process to its registered agent, United Corporate Services, Inc., 248 E. Capitol St, Suite 840, Jackson, MS 39201, or a location where said agent may be found. Manhattan Nursing was, and remains, a corporation engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at Manhattan Nursing.

    1.04    Defendant,  Aurora Cares, LLC (hereinafter "Aurora Cares" or "Nursing Home Defendants" or "Manhattan Nursing Defendants") is a business operating in the state of Mississippi and that may be served with process to its registered agent,  United Corporate Services, Inc., 248 E. Capitol St, Suite 840, Jackson, MS 39201, or a location where said agent may be found. Aurora Cares was, and remains, a corporation engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at Manhattan Nursing.

    1.05    Ashley Bouldin, LPN, Defendant, (hereinafter "Bouldin" or "Nursing Home Defendants" or "Manhattan Nursing Defendants") is a resident citizen of Mississippi, and that may be served with process at 2326 Timber Crossing, Jackson, MS 39212, or a location where she may be found.

    1.06    Fredia Harvey, LPN, Defendant, (hereinafter "Harvey" or "Nursing Home Defendants" or "Manhattan Nursing Defendants") is a resident citizen of Mississippi, and that may be served with process at 301 Elton Park Drive, Apt 33, Jackson, MS 39212, or a location where she may be found.

    1.07    Separate Defendants John Does 1 through 10 are individuals whom Plaintiff is

currently unable to identify despite diligent efforts. Said Defendants are named pursuant to Miss. R. Civ. P. 9(h), insofar as their as their acts and/or omissions were negligent and/or otherwise tortious with respect to the care and treatment of, or in the staffing, supervision, administration, and direction of the care and treatment of Wydett Hawkins, during his residency at Manhattan Nursing. Alternatively, Defendants are liable for the negligent and/or otherwise tortious acts and/or omissions or others with respect to the care and treatment of Wydett Hawkins during his residency at Manhattan Nursing.

1.08    Separate Defendants Unidentified Entities 1 through 10 are entities whom Plaintiff is currently unable to identify despite diligent efforts. Defendants are named pursuant to Miss. R. Civ. P. 9(h), insofar as their acts and/or omissions were negligent and/or otherwise tortious with respect to the care and treatment of WYDETT HAWKINS during his residency at Manhattan Nursing. Alternatively, Defendants are liable for the negligent and/or otherwise tortious 'acts and/or omissions of others with respect to the care and treatment of WYDETT HAWKINS during his residency at Manhattan Nursing.

1.09    At all times material hereto, Defendants owned, operated and/or controlled Manhattan Nursing. The actions of each of The Manhattan Nursing Defendants' servants, agents and employees as set forth herein, are imputed to The Manhattan Nursing Defendants, John Does 1 through 10, and Unidentified Entities 1 through 10.

## II.    JURISDICTION AND VENUE

2.01    Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01-1.09 as if set forth herein.

2.02    Jurisdiction and venue are proper in Hinds County, Mississippi, First Judicial District, in that a substantial alleged act or omission occurred and/or a substantial event that caused

the injury occurred in whole or in part in Hinds County, Mississippi.

### III.    DEFENDANTS' JOINT VENTURE

3.01    Manhattan Nursing and Rehabilitation Center, LLC, and Aurora Cares, LLC (herein collectively referred to as the "Manhattan Nursing Defendants" were engaged in a joint enterprise, in that:

> a.    The Manhattan Nursing Defendants had a mutual understanding for the common purpose of operating Manhattan Nursing; and
>
> b.    The Manhattan Nursing Defendants each had a right to a voice in the direction and control of the means to carry out this common purpose.

3.02    There has been a close relationship between The Manhattan Nursing Defendants at all times relevant.

3.03    As a consequence of the joint enterprise, The Manhattan Nursing Defendants owed a joint duty to MR. HAWKINS to use reasonable care for his safety while upon their premises and under their care and supervision at Manhattan Nursing.

3.04    As a consequence of the joint enterprise, each Defendant's wrongful acts are imputed to and constitute the acts of the other Defendants and the failure of the Defendants shall be aggregated.

### IV.    AGENCY

4.01    Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01-3.04 as if set forth herein.

4.02    All actions of the staff and other employees and agents of Defendants who were responsible for providing care and treatment to MR. HAWKINS while he was a resident at Manhattan Nursing, alleged herein, were performed within the scope of their employment or agency with

Defendants.

4.03    For that reason, Defendants are vicariously liable for the actions of its nursing staff and other employees and agents in relation to the care of, or failure to care for, MR. HAWKINS.

## V.    **FACTUAL SUMMARY**

5.01    Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01-4.03 as if set forth herein.

5.02    MR. HAWKINS began his residency with Manhattan Nursing Defendants on or around November 17, 2021.  That upon admission to Defendants facility, MR. HAWKINS was of unsound mind and incapable of managing the ordinary affairs of his life.  MR. HAWKINS continued to be of unsound mind until his death.  On February 21, 2022, MR. HAWKINS died as a result of the injuries he suffered at Defendants' facility.

5.03    That throughout MR. HAWKINS's residency, the Facility, including any of its staff or other personnel, failed to possess and exercise that degree of care, diligence, and skill as it ordinarily possessed and exercised by minimally competent and reasonably diligent, skillful, careful and prudent nursing homes, and their staff or other personnel.

5.04    MR. HAWKINS suffered oversedation, dehydration, medical conditions, chemical restraint, abuse and neglect, unexplained injuries, had an unkept appearance, suffered disfigurement, poor hygiene, mental decline, and he suffered other injuries, and ultimately death, as a result of the improper care and treatment provided to him by the Facility and/or its staff or other personnel throughout his residency with the Facility.

5.05    MR. HAWKINS suffered many incidents, abuse and neglect, improper care, and injuries, including but not limited to the following:

- As a result of The Facility's negligence Mr. Hawkins suffered severe dehydration. The Facility failed to respond in an appropriate manner to Mr. Hawkins's hydration

status, properly assess Mr. Hawkins's hydration status, and ensure Mr. Hawkins maintained adequate hydration while a resident of the Facility.

• Mr. Hawkins was overmedicated and chemically restrained at the Facility. The Facility failed to appropriately assess Mr. Hawkins' condition, including but not limited to, oversedation and hydration status. Mr. Hawkins' family had to inform staff of Mr. Hawkins' condition and have him sent to the hospital.

• MR. HAWKINS received poor personal care while he was a resident of The Facility.

• MR. HAWKINS received poor hygienic care while he was a resident of The Facility.

• MR. HAWKINS required hospitalizations as a result of the negligence and inaction of the Facility.

• The Facility failed to notify physician and hospital of changes in Mr. Hawkins' condition in a timely manner.

• The Facility failed to meet the standard of care in regard to the care rendered by Mr. Hawkins. As a result, Mr. Hawkins became severely dehydrated and hypernatremic and he was hospitalized on February 10, 2022. Polypharmacy was suspected by the hospital. Ultimately, Mr. Hawkins died on February 21, 2022.

5.06   The conditions reflected herein are readily apparent based on a review of MR. HAWKINS's chart. As a result of the individual and/or combined negligence, gross negligence, reckless, and willful/wanton actions of the Defendants and/or their staff or other personnel, MR. HAWKINS suffered extensive injuries and damages, including loss of his dignity, great pain and suffering, disfigurement, oversedation, dehydration, mental anguish, and ultimately death. The Facility and/or their staff or other personnel failed to meet the appropriate standard of care with regard to the care and treatment provided to MR. HAWKINS throughout his residency with the Facility.

5.07   Defendants were well aware of MR. HAWKINS's medical condition and the care that he required when they represented that they could adequately care for his needs.

5.08   At all times material to this lawsuit, Defendants held themselves out as being:

a.   Skilled in the performance of nursing, rehabilitative and other medical support services;

6

b.      Properly staffed, supervised, and equipped to meet the total needs of their nursing home residents;

c.      Able to specifically meet the total nursing home, medical, and physical therapy needs of WYDETT HAWKINS and other residents like him; and

d.      Licensed and complying on a continual basis with all rules, regulations, and standards established for nursing homes, nursing home licensees and nursing home administrators.

5.09    The Defendants exercised substantial control over significant aspects of the operation and management of Manhattan Nursing during MR. HAWKINS'S residency period, including but not limited to the creation, setting, funding and/or implementation of budgets; the hiring and training of staff; the monitoring of resident acuity levels and staffing sufficiency to meet each resident's needs; control over resident admissions and discharge to and from the facility; and the creation and enforcement of written policies and procedures pertaining to the rules that provide for the safety and well-being of residents.

5.10    Each of these managerial and operational functions had a direct impact on the quality of care delivered to MR. HAWKINS and other residents at Manhattan Nursing and were taken in furtherance of an operation and managerial objective over Manhattan Nursing.

5.11    The Manhattan Nursing Defendants substantially derive their revenue and profits from the receipt of taxpayer dollars through federally and state funded Medicare and Medicaid programs.

5.12    Residents with higher acuity levels, i.e., a greater number and degree of illnesses, place higher demands for care and services on the nursing home and its staff.

5.13    The rate at which The Manhattan Nursing Defendants are reimbursed by Medicare and Medicaid for the delivery of nursing home care and services, and accordingly the amount of their ultimate revenue and profits, are based upon the acuity level of the residents confined to their

facilities.

5.14    The daily reimbursement rate varies based on the level of nursing care and number of therapy minutes provided to the resident.  Acuity levels are determined by the resident's Resource Utilization Group or "RUG" score.

5.15    This creates a financial incentive on nursing home corporations, including The Manhattan Nursing Defendants, to admit and retain residents with greater mental, physical and psychosocial needs.

5.16    Medicare and Medicaid expect and presume that nursing homes, including The Manhattan Nursing Defendants, will actually use the additional funds received for higher acuity level residents to meet those residents' needs, primarily through the additional employment of staff members to deliver the increased care and services.

5.17    Despite receiving additional funds from Medicare and Medicaid based upon the resident acuity levels reported to Medicare for The Manhattan Nursing Defendants prior to, and during, MR. HAWKINS's residency period, Defendants failed to ensure, through their operational, budgetary, consultation and managerial decisions and actions, that Manhattan Nursing was sufficiently staffed to meet the individual needs of MR. HAWKINS during his residency period.

5.18    This lack of sufficient staff directly resulted in MR. HAWKINS not receiving the very basic and necessary services to prevent, among other things, neglect and abuse leading to incidents, injuries, and ultimately death.

5.19    While holding The Manhattan Nursing Defendants out to MR. HAWKINS and other members of the public as providing excellent care, Defendants, as reflected on the Medicare and Medicaid Cost Reports – signed under penalty of perjury and filed with state and federal governments – extracted considerable profit through the management and operation of the

facilities by paying management, administration and consulting fees, as well as other "costs," to the Defendants named herein and other related entities from funds which should have been utilized to hire, train and retain sufficient numbers of qualified staff to meet the needs of MR. HAWKINS.

5.20    The Defendants failed to discharge their obligations of care to WYDETT HAWKINS. As a consequence thereof, WYDETT HAWKINS suffered catastrophic injuries, disfigurement, extreme pain and suffering, mental anguish, and death.  The scope and severity of the recurrent wrongs inflicted upon WYDETT HAWKINS while under the care of the facility accelerated the deterioration of his health and physical condition beyond that caused by the normal aging process and resulted in physical and emotional trauma as described above.

5.21    The wrongs complained of herein were of a continuing nature, and occurred throughout WYDETT HAWKINS's stay at Defendants' facility.

5.22    Plaintiff alleges that on all of the occasions complained of herein, WYDETT HAWKINS was under the care, supervision, and treatment of the agents and/or employees of Defendants and that the injuries complained of herein were proximately caused by the acts and omissions of Defendants named herein.

5.23    Defendants had vicarious liability for the acts and omissions of all persons or entities under Defendants' control, either directly or indirectly, including their employees, agents, consultants, and independent contractors, whether in-house or outside entities, individuals, agencies, or pools causing or contributing to the injuries of WYDETT HAWKINS.

5.24    Defendants have joint and several liability for the actions complained of herein because they consciously and deliberately pursued a common plan or design to commit the tortious acts described in this Complaint and these Defendants actively took part in such actions.

## COUNT ONE: NEGLIGENCE AGAINST THE MANHATTAN NURSING DEFENDANTS, BOULDIN, HARVEY, JOHN DOES 1-10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

5.25    Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01-5.24 as if set forth herein.

5.26    Defendants owed a duty to residents, including WYDETT HAWKINS, to provide adequate and appropriate custodial care and supervision, which a reasonably careful person would provide under similar circumstances.

5.27    Defendants owed a duty to residents, including WYDETT HAWKINS, to exercise reasonable care in providing care and services in a safe and beneficial manner.

5.28    Defendants owed a duty to WYDETT HAWKINS to use reasonable care to protect him from unreasonable risk of harm.

5.29    At all times relevant herein, MR. HAWKINS was in a defenseless and dependent condition.  As a result of his defenseless and dependent condition, MR. HAWKINS relied upon Defendants to provide for his safety, protection, care and treatment.

5.30    At all times relevant herein, Defendants had a duty to act in accordance with the standards of care required of those who own, operate, manage, maintain, and/or control a skilled nursing facility.

5.31    This duty required Defendants to implement and enforce policies and procedures to ensure the proper care for, and treatment of, residents such as MR. HAWKINS.

5.32    This duty required Defendants to have sufficient and qualified staff to ensure the proper care for, and treatment of, residents such as MR. HAWKINS.

5.33    This duty required Defendants to ensure that its agents, servants and/or employees were properly educated and trained with regard to the care for, and treatment of, residents such as

MR. HAWKINS.

5.34    The Defendants and their employees/agents breached their duty to use reasonable care in the performance of nonmedical, administrative, ministerial or routine care, for WYDETT HAWKINS's safety.

5.35    Defendants breached this duty by failing to deliver care and services that a reasonably careful person would have provided under similar circumstances and by failing to prevent the mistreatment, abuse and neglect of WYDETT HAWKINS.

5.36    As a direct and proximate result of the negligence of Defendants as set out above, WYDETT HAWKINS suffered injuries, as set forth herein all of which required hospitalization and medical treatment, and all of which required MR. HAWKINS to incur significant hospital and medical expenses.

5.37    WHEREFORE, based on such conduct of Separate Defendants as set forth above, Plaintiff asserts a claim for judgment for compensatory and punitive damages against Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

### COUNT TWO: MEDICAL MALPRACTICE AGAINST THE MANHATTAN NURSING DEFENDANTS, BOULDIN, HARVEY, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

5.38    Plaintiff hereby re-alleges and incorporates the allegations in paragraphs 1.01-5.37, as if fully set forth herein.

5.39    Separate Defendants owed a duty to residents, including WYDETT HAWKINS, to hire, train, and supervise employees so that such employees delivered care and services to residents in a safe and beneficial manner.

5.40   Separate Defendants owed a duty to residents, including WYDETT HAWKINS, to render care and services as a reasonably prudent and similarly situated nursing home employee would render, including, but not limited to, rendering care and services in a safe and beneficial manner.

5.41   Separate Defendants owed a duty to assist all residents, including WYDETT HAWKINS, in attaining and maintaining the highest level of physical, mental, and psychosocial well-being.

5.42   Separate Defendants failed to meet the standard of care and violated their duty of care to WYDETT HAWKINS through mistreatment, abuse, and neglect.  The medical negligence of these Defendants includes, but is not limited to, the following acts and omissions:

   a.   LEGAL COMPLIANCE – Complying with applicable federal regulations, state statutes and rules, and professional standards of care;

   b.   WELL-BEING AND QUALITY OF LIFE – Providing goods and services for WYDETT HAWKINS necessary to avoid physical harm and mental anguish; caring for WYDETT HAWKINS in a manner and in an environment that promoted maintenance or enhancement of his quality of life; and providing the necessary care and services for WYDETT HAWKINS to attain or maintain the highest practicable physical, mental, and psychosocial well-being, in accordance with the comprehensive assessment and plan of care;

   c.   ASSESSMENT – Conducting a comprehensive, accurate, standardized reproducible assessment of WYDETT HAWKINS's functional capacity;

   d.   CARE PLANNING – Developing and implementing a comprehensive, individualized care plan for WYDETT HAWKINS that included measurable objectives and timetables to meet his medical, nursing, mental, and psychosocial needs;

   e.   ACCIDENTS – Ensuring that WYDETT HAWKINS's environment remained as free from accident hazards and that he received adequate supervision and assistance devices to prevent accidents;

   f.   HYDRATION AND NUTRITION – Ensuring that WYDETT HAWKINS maintained acceptable parameters of nutritional status and offering him sufficient fluid intake to maintain proper hydration and health;

g.   NURSING INTERVENTIONS – Developing and implementing new nursing interventions when Defendants' Care Plan for WYDETT HAWKINS no longer met his needs;

h.   UNNECESSARY DRUGS – Ensuring that WYDETT HAWKINS' drug regimen was free from unnecessary drugs.

i.   SUFFICIENT STAFF – Having sufficient nursing staff to provide nursing and related services to allow WYDETT HAWKINS to attain or maintain the highest practicable physical, mental, and psychosocial well-being in accordance with his resident assessments and individual plans of care;

j.   COMPETENT STAFF – Ensuring that direct care staff were competent in the skills and techniques necessary to care for WYDETT HAWKINS's needs, and were able to perform their assigned duties;

k.   CLINICAL RECORDS – Maintaining clinical records for WYDETT HAWKINS in accordance with accepted professional standards and accepted standards of professional nursing practice; and

l.   OTHER FAILURES – which will be shown throughout litigation.

5.43   A reasonably prudent nursing home operating under the same or similar conditions, would not have failed to provide the care listed in the above paragraphs. Each of the foregoing acts of medical negligence on the part of Defendants was a proximate cause of WYDETT HAWKINS's injuries and death. WYDETT HAWKINS's injuries and death were foreseeable to these Defendants.

5.44   Defendants' conduct in breaching the duties owed to WYDETT HAWKINS was grossly negligent, willful, wanton, malicious and reckless.

5.45   As a direct and proximate result of such grossly negligent, willful, wanton, reckless and malicious conduct, WYDETT HAWKINS suffered injuries and also suffered extreme pain, suffering, and mental anguish, all of which required medical treatment. As a result, MR. HAWKINS incurred significant medical expenses.

5.46   WHEREFORE, based on the conduct set forth above of Separate Defendants, Plaintiff asserts a claim for judgment for compensatory and punitive damages against these

Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

### COUNT THREE:  MALICE, AND/OR GROSS NEGLIGENCE WHICH EVIDENCES A WILLFUL, WANTON, OR RECKLESS DISREGARD FOR THE SAFETY OF WYDETT HAWKINS AGAINST THE MANHATTAN NURSING DEFENDANTS, BOULDIN, HARVEY, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

5.47    Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01- 5.46, as if fully set forth herein.

5.48    The longevity, scope and severity of Defendants' failures and actions constitute malice, and/or gross negligence that evidences a willful, wanton or reckless disregard for the safety of others, including WYDETT HAWKINS.  Specifically, such conduct was undertaken by Defendants without regard to the health and safety consequences to those residents, such as WYDETT HAWKINS, entrusted to their care. Moreover, such conduct evidences little regard for their duties of care, good faith, and fidelity owed to MR. HAWKINS.

5.49    The malice, and/or gross negligence which evidences a willful, wanton, or reckless disregard for the safety of others, including WYDETT HAWKINS, includes, but is not limited to, acts and omissions as alleged in the above paragraphs, as well as the following:

    a.    LEGAL COMPLIANCE – Complying with applicable federal regulations, state statutes and rules, and professional standards of care;

    b.    WELL-BEING AND QUALITY OF LIFE – Providing goods and services for WYDETT HAWKINS necessary to avoid physical harm and mental anguish; caring for WYDETT HAWKINS in a manner and in an environment that promoted maintenance or enhancement of his quality of life; or providing the necessary care and services for WYDETT HAWKINS to attain or maintain the highest practicable physical, mental, and psychosocial well-being, in accordance with the comprehensive assessment and plan of care;

    c.    ASSESSMENT – Conducting a comprehensive, accurate, standardized

reproducible assessment of WYDETT HAWKINS's functional capacity;

d.   CARE PLANNING – Developing and implementing a comprehensive, individualized care plan for WYDETT HAWKINS that included measurable objectives and timetables to meet his medical, nursing, mental, and psychosocial needs;

e.   ACCIDENTS – Ensuring that WYDETT HAWKINS's environment remained as free from accident hazards and that he received adequate supervision and assistance devices to prevent accidents;

f.   HYDRATION AND NUTRITION – Ensuring that WYDETT HAWKINS maintained acceptable parameters of nutritional status and offering him sufficient fluid intake to maintain proper hydration and health;

g.   NURSING INTERVENTIONS – Developing and implementing new nursing interventions when Defendants' Care Plan for WYDETT HAWKINS no longer met his needs;

h.   UNNECESSARY DRUGS – Ensuring that WYDETT HAWKINS' drug regimen was free from unnecessary drugs.

i.   SUFFICIENT STAFF – Having sufficient nursing staff to provide nursing and related services to allow WYDETT HAWKINS to attain or maintain the highest practicable physical, mental, and psychosocial well-being in accordance with his resident assessments and individual plans of care;

j.   COMPETENT STAFF – Ensuring that direct care staff were competent in the skills and techniques necessary to care for WYDETT HAWKINS's needs, and were able to perform their assigned duties;

k.   CLINICAL RECORDS – Maintaining clinical records for WYDETT HAWKINS in accordance with accepted professional standards and accepted standards of professional nursing practice; and

l.   OTHER FAILURES – which will be shown throughout litigation.

5.50   As a direct and proximate result of the above cited malice, and/or gross negligence which evidences a willful, wanton, or reckless disregard for the safety of others, including WYDETT HAWKINS, he suffered injuries as set herein, all of which required MR. HAWKINS to incur significant medical expenses as well as suffer extreme pain, suffering, mental anguish, embarrassment, and fright, all of which required hospitalization and medical treatment, and all of

which resulted in death.

5.51    WHEREFORE, based on such conduct of Separate Defendants, Plaintiff asserts a claim for judgment for compensatory and punitive damage against Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, and humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

### COUNT FOUR: STATUTORY SURVIVAL CLAIM AGAINST THE MANHATTAN NURSING DEFENDANTS, BOULDIN, HARVEY, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

5.52    Plaintiff re-alleges and incorporates the allegations in paragraph 1.01 through 5.51, as if fully set forth herein.

5.53    As a direct and proximate result of the negligence, malice, and/or gross negligence that evidenced and willful, wanton or reckless disregard for the safety of others, including WYDETT HAWKINS, MR. HAWKINS suffered injuries and death as set forth herein, all of which caused physical pain and suffering, mental anguish, humiliation, embarrassment, disfigurement, fright, and emotional distress.  As a result, WYDETT HAWKINS incurred significant hospital and medical expenses.

5.54    As a direct, natural and proximate result of the negligence, malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, WYDETT HAWKINS died on February 21, 2022, thereby incurring funeral, burial, and other related expenses.

5.55    WHEREFORE, based on and arising out of the conduct of Separate Defendants as set out above, Plaintiff asserted a claim for judgment for compensatory and punitive damages for WYDETT HAWKINS's death, including, but not limited to medical expenses, costs of administration of WYDETT HAWKINS's estate, and other related expenses incurred as a result of Separate

Defendant's wrongful acts and omissions, as well as damages for physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

### COUNT FIVE: STATUTORY WRONGFUL DEATH CLAIM AGAINST THE MANHATTAN NURSING DEFENDANTS, BOULDIN, HARVEY, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

5.56     Plaintiff re-alleges and incorporates the allegations in paragraph 1.01 through 5.55 as if fully set forth herein.

5.57     As a direct and proximate result of the negligence, malice, and/or gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, including WYDETT HAWKINS, Defendants caused the death of WYDETT HAWKINS.

5.58     As a direct, natural and proximate result of the negligence, malice, and/or gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, WYDETT HAWKINS suffered extreme pain, suffering, mental anguish, embarrassment, disfigurement, and fright, all of which required hospitalization and medical treatment. WYDETT HAWKINS died on February 21, 2022, thereby incurring funeral, burial and other related expenses.

5.59     As a result of the death of WYDETT HAWKINS, the wrongful death beneficiaries suffered loss of consortium, attention, guidance, care, protection, training, companionship, compassion, affection, and love.

5.60     WHEREFORE, based on such conduct of Separate Defendants as set out above, Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Separate Defendants including but not limited to WYDETT HAWKINS's physical pain and suffering, mental anguish, disfigurement, and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law. Additionally, based on such conduct, Plaintiff

asserts a claim for judgment for all compensatory and punitive damages against Separate Defendants based on the damages sustained by the wrongful death beneficiaries as a result of the loss of a personal relationship with WYDETT HAWKINS including but not limited to loss of support, companionship, consortium, attention, guidance, care, protection, training, compassion, affection, and love, in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled.

## **PRAYER FOR RELIEF**

Pursuant to Mississippi Rules of Civil Procedure, Plaintiff demands that all issues of fact in the case be tried to a jury.

WHEREFORE, the Plaintiff, Verna Hawkins, Individually, and on behalf of and for the use and benefit of the wrongful death beneficiaries of WYDETT HAWKINS, and for her causes of action, prays for judgment against all Defendants, as follows:

1.      For damages to be determined by the jury, in an amount exceeding the minimum jurisdictional amount of this Court, and adequate to compensate Plaintiff for all the injuries and damages sustained;

2.      For all general and special damages caused by the alleged conduct of Defendants;

3.      For the costs of litigating this case;

4.      For punitive damages sufficient to punish Defendants for their egregious conduct and to deter all Defendants from repeating such atrocities; and

5.      For all relief to which Plaintiff is entitled by Mississippi law.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, sues and demands judgment of and from the Defendants, for all damages allowed under law including compensatory damages and punitive damages in an amount to be determined by the jury, and for any such other relief which

the Court may deem appropriate.

RESPECTFULLY SUBMITTED, this the _____ day of June, 2023.

**PLAINTIFF, VERNA HAWKINS,**
**INDIVIDUALLY, AND ON BEHALF OF AND**
**FOR THE USE AND BENEFIT OF THE**
**WRONGFUL DEATH BENEFICIARIES OF**
**WYDETT HAWKINS**

BY: _____
                R. PAUL WILLIAMS, III

R. PAUL WILLIAMS, III (MSB #102345)
COURTNEY M. WILLIAMS (MSB #102347)
WILLIAMS NEWMAN WILLIAMS, PLLC
640 N. STATE STREET (39202)
Post Office Box 23785
Jackson, Mississippi 39225
Tel:   (601) 949-5080
Fax:   (601) 949-5538
Email: paul@wnwlegal.com
            courtney@wnwlegal.com

## IN THE CIRCUIT COURT OF HINDS COUNTY, MISSISSIPPI
### FIRST JUDICIAL DISTRICT

**VERNA HAWKINS, INDIVIDUALLY,
AND ON BEHALF OF ANDFOR THE USE
AND BENEFIT OF THE WRONGFUL DEATH
BENEFICIARIES OF WYDETT HAWKINS**                       **PLAINTIFF**

**VS.**                                        **CAUSE NO.:**_____

**MANHATTAN NURSING AND REHABILITATION
CENTER, LLC, AURORA CARES, LLC, ASHLEY
BOULDIN, LPN, FREDIA HARVEY, LPN,
UNIDENTIFIED ENTITIES 1-10, AND JOHN DOES
1-10 (as to THE MANHATTAN NURSING FACILITY)**          **DEFENDANTS**

### CERTIFICATE OF EXPERT CONSULTATION
### PURSUANT TO MISSISSIPPI CODE ANNOTATED § 11-1-58

I hereby certify pursuant to Miss. Code Ann. § 11-1-58(1)(a) that I have reviewed the facts

of this case and have consulted with at least one expert qualified pursuant to the Mississippi Rules

of Civil Procedure and the Mississippi Rules of Evidence to give expert testimony as to standard

of care or negligence and who I reasonably believe is knowledgeable in the relevant issues

involved in this action.  I have concluded on the basis of such review and consultation that there

is a reasonable basis for the commencement of this action.

SO CERTIFIED this _____ day of June, 2023.

_____
R. PAUL WILLIAMS, III

R. PAUL WILLIAMS, III (MSB# 102345)
COURTNEY M. WILLIAMS (MSB# 102347)
WILLIAMS NEWMAN WILLIAMS, PLLC
Post Office Box 23785
Jackson, Mississippi 39225
(601) 949-5080



EXHIBIT
A

# COVER SHEET
## Civil Case Filing Form
*(To be completed by Attorney/Party Prior to Filing of Pleading)*

| Court Identification Docket # | | Case Year | Docket Number |
|---|---|---|---|
| 25 / CV | | 2023 | 361 |
| County #  Judicial District  Court ID (CH, CI, CO) | | | Local Docket ID |

Month 0 Date 2 6 Year 2 3

Mississippi Supreme Court Form AOC/01
Administrative Office of Courts (Rev 2020)

This area to be completed by clerk

Case Number if filed prior to 1/1/94

In the **CIRCUIT**  Court of  **HINDS**  County — **FIRST**  Judicial District

## Origin of Suit (Place an "X" in one box only)
- [X] Initial Filing
- [ ] Remanded
- [ ] Reinstated
- [ ] Reopened
- [ ] Foreign Judgment Enrolled
- [ ] Joining Suit/Action
- [ ] Transfer from Other court
- [ ] Appeal
- [ ] Other

## Plaintiff - Party(ies) Initially Bringing Suit Should Be Entered First - Enter Additional Plaintiffs on Separate Form

**Individual**  HAWKINS                VERNA

Last Name   First Name   Maiden Name, if applicable   M.I.   Jr/Sr/III/IV

- [X] Check ( x ) if Individual Plaintiff is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
  Estate of  **WYDETT HAWKINS**
- [ ] Check ( x ) if Individual Plaintiff is acting in capacity as Business Owner/Operator (d/b/a) or State Agency, and enter entity
  D/B/A or Agency

**Business**

Enter legal name of business, corporation, partnership, agency - If Corporation, indicate the state where incorporated
- [ ] Check ( x ) if Business Plaintiff is filing suit in the name of an entity other than the above, and enter below:
  D/B/A

**Address of Plaintiff**

**Attorney (Name & Address)**  R. PAUL WILLIAMS, III 640 N. STATE ST. JACKSON, MS 39202   MS Bar No. 102345
- [ ] Check ( x ) if Individual Filing Initial Pleading is NOT an attorney
Signature of Individual Filing:

## Defendant - Name of Defendant - Enter Additional Defendants on Separate Form

**Individual**

Last Name   First Name   Maiden Name, if applicable   M.I.   Jr/Sr/III/IV

- [ ] Check ( x ) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
  Estate of
- [ ] Check ( x ) if Individual Defendant is acting in capacity as Business Owner/Operator (d/b/a) or State Agency, and enter entity:
  D/B/A or Agency

**Business**  MANHATTAN NURSING AND REHABILITATION CENTER, LLC

Enter legal name of business, corporation, partnership, agency - If Corporation, indicate the state where incorporated
- [ ] Check ( x ) if Business Defendant is filing suit in the name of an entity other than the above, and enter below:
  D/B/A

**Attorney (Name & Address) - If Known**   MS Bar No.

- [ ] Check ( x ) if child support is contemplated as an issue in this suit.*
  *If checked, please submit completed Child Support Information Sheet with this Cover Sheet

## Nature of Suit (Place an "X" in one box only)

### Domestic Relations
- [ ] Child Custody/Visitation
- [ ] Child Support
- [ ] Contempt
- [ ] Divorce:Fault
- [ ] Divorce: Irreconcilable Diff.
- [ ] Domestic Abuse
- [ ] Emancipation
- [ ] Modification
- [ ] Paternity
- [ ] Property Division
- [ ] Separate Maintenance
- [ ] Term. of Parental Rights-Chancery
- [ ] UIFSA (eff 7/1/97; formerly URESA)
- [ ] Other

### Appeals
- [ ] Administrative Agency
- [ ] County Court
- [ ] Hardship Petition (Driver License)
- [ ] Justice Court
- [ ] MS Dept Employment Security
- [ ] Municipal Court
- [ ] Other

### Business/Commercial
- [ ] Accounting (Business)
- [ ] Business Dissolution
- [ ] Debt Collection
- [ ] Employment
- [ ] Foreign Judgment
- [ ] Garnishment
- [ ] Replevin
- [ ] Other

### Probate
- [ ] Accounting (Probate)
- [ ] Birth Certificate Correction
- [ ] Mental Health Commitment
- [ ] Conservatorship
- [ ] Guardianship
- [ ] Joint Conservatorship & Guardianship
- [ ] Heirship
- [ ] Intestate Estate
- [ ] Minor's Settlement
- [ ] Muniment of Title
- [ ] Name Change
- [ ] Testate Estate
- [ ] Will Contest
- [ ] Alcohol/Drug Commitment (Involuntary)

- [ ] Alcohol/Drug Commitment (Voluntary)
- [ ] Other

### Children/Minors - Non-Domestic
- [ ] Adoption - Contested
- [ ] Adoption - Uncontested
- [ ] Consent to Abortion
- [ ] Minor Removal of Minority
- [ ] Other

### Civil Rights
- [ ] Elections
- [ ] Expungement
- [ ] Habeas Corpus
- [ ] Post Conviction Relief/Prisoner
- [ ] Other

### Contract
- [ ] Breach of Contract
- [ ] Installment Contract
- [ ] Insurance
- [ ] Specific Performance
- [ ] Other

### Statutes/Rules
- [ ] Bond Validation
- [ ] Civil Forfeiture
- [ ] Declaratory Judgment
- [ ] Injunction or Restraining Order
- [ ] Other

### Real Property
- [ ] Adverse Possession
- [ ] Ejectment
- [ ] Eminent Domain
- [ ] Eviction
- [ ] Judicial Foreclosure
- [ ] Lien Assertion
- [ ] Partition
- [ ] Tax Sale: Confirm/Cancel
- [ ] Title Boundary or Easement
- [ ] Other

### Torts
- [ ] Bad Faith
- [ ] Fraud
- [ ] Intentional Tort
- [ ] Loss of Consortium
- [ ] Malpractice - Legal
- [ ] Malpractice - Medical
- [ ] Mass Tort
- [X] Negligence - General
- [ ] Negligence - Motor Vehicle
- [ ] Premises Liability
- [ ] Product Liability
- [ ] Subrogation
- [ ] Wrongful Death
- [ ] Other

IN THE <u>CIRCUIT</u> COURT OF <u>HINDS</u> COUNTY, MISSISSIPPI

<u>FIRST</u> JUDICIAL DISTRICT, CITY OF _____

Docket No._____ - _____ - _____
  File Yr      Chronological No.      Clerk's Local ID

Docket No. If Filed
Prior to 1/1/94 _____

## DEFENDANTS IN REFERENCED CAUSE - Page 1 of \_\_\_ Defendants Pages
## IN ADDITION TO DEFENDANT SHOWN ON CIVIL CASE FILING FORM COVER SHEET

**Defendant #2:**

**Individual**: _____ _____ ( _____ ) _____ _____
       Last Name              First Name              Maiden Name, if Applicable      Middle Init.      Jr/Sr/III/IV

\_\_\_Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

Estate of _____

\_\_\_Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

D/B/A _____

**Business** <u>AURORA CARES, LLC</u>
       Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

\_\_\_Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

D/B/A _____

**ATTORNEY FOR THIS DEFENDANT**: _____ Bar # or Name: _____   *Pro Hac Vice* (✓)\_\_\_ Not an Attorney(✓)\_\_\_

**Defendant #3:**

**Individual**: <u>BOULDIN</u>    <u>ASHLEY</u> ( _____ ) _____ _____
       Last Name              First Name              Maiden Name, if Applicable      Middle Init.      Jr/Sr/III/IV

\_\_\_Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

Estate of _____

\_\_\_Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

D/B/A _____

**Business** _____
       Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

\_\_\_Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

D/B/A _____

**ATTORNEY FOR THIS DEFENDANT**: _____ Bar # or Name: _____   *Pro Hac Vice* (✓)\_\_\_ Not an Attorney(✓)\_\_\_

**Defendant #4:**

**Individual**: <u>HARVEY</u>    <u>FREDIA</u> ( _____ ) _____ _____
       Last Name              First Name              Maiden Name, if Applicable      Middle Init.      Jr/Sr/III/IV

\_\_\_Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

Estate of _____

\_\_\_Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

D/B/A _____

**Business** _____
       Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

\_\_\_Check (✓) if Business Defendant is being sued in the name of an entity other than the above, and enter below:

D/B/A _____

**ATTORNEY FOR THIS DEFENDANT**: _____ Bar # or Name: _____   *Pro Hac Vice* (✓)\_\_\_ Not an Attorney(✓)\_\_\_